May it please the Court. Lauren Greenberg for Abel De Leon. There are two issues before the court in this appeal. First, whether the district court plainly erred in failing to recognize that Mr. De Leon had an absolute right to withdraw his guilty plea prior to the court's acceptance of the plea. And second, whether the district court plainly and improperly interfered in plea negotiations. Turning to the first issue, the government acknowledges in its response brief that the court had not accepted Mr. De Leon's guilty plea at the point at which he asked that the case be set for trial. The government argues, however, that it was still within the court's power to decide whether or not to allow Mr. De Leon to withdraw his guilty plea. The rules of criminal procedure, however, do not allow for this type of halting pattern, where a guilty plea that has not been accepted is still subject to the district court's power to decide whether to allow the defendant to withdraw the guilty plea. Am I correct that there was never a motion to withdraw a plea? There was never a formal motion to withdraw the guilty plea filed. That is correct. Does that matter? Absolutely not, Your Honor, and I think the government acknowledges that. It suggests that it's perhaps evidence that Mr. De Leon did not withdraw the guilty plea, but that it was not required in order for him to do so. The evidence that Mr. De Leon withdrew his guilty plea was simply that at the April 22nd hearing that began as a sentencing hearing but ended with Mr. De Leon asking that the case be set for trial, the district court essentially gave him two options. The court said you can admit that what you said in the guilty plea is true, that what you said in the factual basis in support of the plea agreement is true, or you can withdraw your guilty plea and proceed to trial. After consulting with there was still a question at that point whether or not Mr. De Leon had withdrawn his guilty plea. That question was answered at the May 13th docket call where the parties announced ready for trial, and the transcript from that docket call, it was a short proceeding, but that's been made part of the record on appeal. And in that proceeding, the district court affirmatively states that if Mr. De Leon asked for the case to be set for trial at this point, that the court would not accept a guilty plea after that point. So it's really an untenable position to suggest that Mr. De Leon had not unequivocally withdrawn his guilty plea prior to the June 23rd pretrial conference in which a jury veneer was waiting in the courtroom for selection. What had occurred at that hearing was the court was addressing some pretrial rulings on the admissibility of evidence. Specifically, defense counsel, Mr. Hudson, was arguing that under the Federal Rule of Evidence 410, certain statements made by Mr. De Leon in connection with the withdrawal of his guilty plea should be excluded from the trial in this case. And that was at the point in time when the court really pivoted and where this Rule 11 D1 error became obvious. That's when the court announced that, frankly, the court was not inclined to allow Mr. De Leon to withdraw his guilty plea. Again, this is where I believe the district court's plain error under Rule 11 D1 of the Rules of Criminal Procedure became clear and obvious. And this is at Record on Appeal 578 and 79. We are on plain error review because there was no objection and no pointing out by Mr. De Leon. I think we can win under plain error review on this first issue. We've shown that there was an error, that the error was obvious. Again, when the court said, I'm not inclined to allow Mr. De Leon to withdraw the guilty plea, I think the court's error in its understanding of what was provided by Rule 11 D1 is obvious. Also, under plain error review, the third prong is a demonstration that the error affected Mr. De Leon's substantial rights. And I think there's no question about that. When the court pivoted and said it was not inclined to allow Mr. De Leon to withdraw the guilty plea, the court really shifted the burden to the defense to articulate a viable basis for being allowed to proceed to trial. And it was the shifting of the burden to the defense to articulate really a prima facie showing of innocence before the doors to the trial that affected Mr. De Leon's decision to plead guilty and to forego a trial. So I think there is a showing of an effect on his substantial rights. I cite, or I refer the court to the a good case that really lays out the analytical framework for the plain error review when the error is sounded in 11 D1 of the rules of criminal procedure. Is your point that your client would have been better off going to trial, and that's how you satisfy prong three? Or is it that any judicial interference is sort of a per se satisfying of prong three? I heard you sort of making both arguments, so I want to clarify. I'm not arguing for a per se finding of effect on substantial rights. I think this court has stated that because of the unqualified nature of the right, it's hard to imagine a circumstance where an obvious violation of that right would not affect a defendant's substantial rights. So I think that the showing, because of the absolute nature of the right, is strong, but not a per se rule. That would not be something I'm maintaining. And I'm not saying he would be better off necessarily. I don't think that's part of the court's analysis whatsoever. I think the issue is, would he have pleaded guilty? Would he have asked for a jury trial? We know he had asked for a jury trial at that April 22nd hearing. He reconfirmed his desire for a jury trial at the May 13th docket call, even when the court was saying that the court would not accept a guilty plea past that point. And defense counsel reassured the court that this had been discussed with Mr. DeLeon, and Mr. DeLeon wanted a jury trial. The problem here is this is like a rolling plea hearing, and it's every time they're having some sort of proceeding, it's also a plea hearing, because the magistrate judge, by agreement with the defendant, took the plea, and then, of course, the district judge has to approve the plea. So we're at sentencing, where the district judge would approve the plea and then get into sentencing, and then we start getting into all this in and out about whether he wants to go to trial, and it just never ends. I've never seen a proceeding like this where a defendant waffles left and right on what he wants to do and is evasive in his answers to the judge, I guess so, I guess so, and the judge keeps trying to work its way through this, including saying, well, set it for trial, and then we're back into it again. And when the judge points out your entrapment defense, because suddenly the defendant's entrapment offense that the, you know, law enforcement is trying to entrap people by not removing all these sites from the televisions or computers, I've never seen a proceeding like this, but it's, I frankly don't think it's as cut and dried as you want it to be, especially under plain error. I would agree it's an unusual proceeding, to say the least, and I do think that in the April 22nd hearing that began as a sentencing hearing, it did evolve into a plea colloquy, in essence. Your Honor is absolutely correct that there was an ongoing effort on the district court's part, at least at that hearing, to ascertain whether the guilty plea that the I think it is clear-cut at the point where at the pretrial hearing, when it's clear-cut that there was going to be a jury trial, there was a jury veneer waiting, and that doesn't mean that a defendant can't change his mind, but the defendant had not asked to be heard. The defendant had not said, Your Honor, wait a minute, you know, can we stop this train in its tracks? This was prompted by the district court statement that, frankly, I'm not real inclined to allow Mr. de Leon to withdraw his guilty plea, and I think that this was not a waffling on the part of Mr. de Leon. This was an interjection on the part of the district court of its view that it still had the power to pre-termit a jury trial, and I think that is plain under the rule of criminal procedure 11d1, that that was a plainly erroneous view of what was provided under that rule, where a defendant has an absolute right to withdraw a pre-acceptance. Does it matter that the district court never formally prevented the withdrawal? I know it was menacing language from the bench, but at the end of the day, the district court didn't actually carry through without threat. Does that matter? I think that there did reach a point in time after defense counsel had articulated that there was a defense, that the defense did have a strategy, and that wasn't willing to discuss a strategy, but where defense counsel did get worn down, essentially, and asked Mr. de Leon his position. Defense counsel was worn down? By the district court's continuing insistence that what was really, what really prompted this whole matter was that Mr. de Leon had wanted to pursue an entrapment defense, which had already been ruled on that that would not be what would occur. So Mr. Hudson had tried to explain to the court that that was not his view of what this trial would be about. He had a defense. He had a strategy. At some point, Mr. Hudson did, as Judge Ho suggests, turn to Mr. de Leon and say, how would you proceed? And Mr. de Leon is still questioning. He's confused. He doesn't understand that now the burden has been sort of placed on him to explain his defensive theories. And I think it never should have gotten to that point, and it only did because the district court insisted it still had the power to prevent him from withdrawing his guilty plea. So, no, I don't think that that matters as far as the obviousness of the Rule 11d1 error. I would like to make a point, though. There is a second issue here, and that is whether the district court interfered or participated in plea negotiations. And this is an important point. I think the court, by shifting the burden to Mr. de Leon to articulate a defense that the court would outcome of this proceeding was obvious, he would be found guilty, that there wasn't a basis for him to assert his innocence. And I think that this is a clear interference in plea negotiations, but I think there's even a clearer interference, and that is when Mr. de Leon was really trying to decide at that point whether to withdraw his plea, the court offered to change the terms of the plea agreement, which is a clear participation in plea negotiations, when the court said, we'll have a contested hearing, even though Mr. de Leon had already agreed in his factual basis to not do so. And I think that's a clear violation of Rule 11c1 to not interfere or participate in plea negotiations. I see my time is up. Yes, you've saved time for rebuttal. Thank you. Okay, thank you. Mr. Durbin? Good morning. May it please the Court, Richard Durbin for the United States. Judge Barksdale, you raised an interesting point, and I think it's our point in part. This was a rolling process. At the outset, the defendant entered a plea agreement with the government. I don't read the record to say that the terms of that were agreed by the magistrate judge, and at that plea hearing, he expressed some of the same things he did to the district court at the first sentencing hearing and at the pre-trial conference jury selection some months later. And basically, he didn't like where he was. At one point, he says to the district court, please make all of this go away. And he was grappling with pleading guilty or going to trial. He had effective counsel who was trying to figure out what his defenses were. If you look at the proceeding on June 23rd, and June 23rd is when Judge Moses has a jury there ready to go forward. That follows the docket call on May 13th, where she says basically, well, this is a trial, and this being a trial, he's not going to get to plead if he changes his mind. And everybody says that's fine. And I think what happened in the interim there somewhere is the judge sort of forgot what she said at the docket call, but up to the point of June 23rd, she had been treating it as though the plea had been withdrawn. She set it for a jury. She said there's no more pleas. And what was going on at the June 23rd proceeding is she was making rulings on motions in limine and questions about the admissibility of defenses. And she had thought that the defense was going to put on some sort of affirmative defense based on entrapment, although she didn't have much confidence in that type of defense. She thought that's what they were going to assert. They — the defense lawyer, Mr. Hudson, stood up and said, well, we have no affirmative defenses, which I think sort of threw her into, well, what exactly is going on here? Why are we going through all of this? And in the end, as she was making rulings on the admissibility of evidence, Mr. Hudson volunteered that, well, he knew he had some problems with his defense. One of the main issues was how many videos was Mr. de Leon going to be held accountable for? Because he said he deleted the videos from his computer. And his statements were, I don't know how they find me culpable for this or to that effect, because I deleted all the videos. They must have been doctored in some way. But he tacitly admits that he had child pornography videos on there and that he had viewed them. And he specifically admitted it at the guilty plea hearing. And Mr. Hudson is trying to basically navigate this, well, if I put my client — and he says this out loud. If I put my client on the stand, he can be confronted with those statements. And it's during the course of that that Mr. de Leon one more time changes his mind. And essentially what the district court says going through it is, look, you don't have a defense. There's no affirmative defense. You've given no notice of affirmative defense. So you can't get up and say, gee, I thought that it was lawful because they were on the case off, and you haven't asserted that, and it's not entrapment anyway. And as to the statements that you've made in prior proceedings, Judge Moses said those are going to come in. And so at that point, it sort of devolved down to or resolved down to, this is a sentencing question. And at that point, there was conferring between Mr. Hudson and his client. And the court said, what do you want to do near the end of the hearing? She said, I've got a jury downstairs. They've been waiting. Do you want a jury trial, or do you want to persist in your guilty plea and go forward and have all of these factual issues heard by me at the sentencing? And that's what Mr. de Leon ultimately decided on. But he's — he went back and forth a number of times, and he's gone back and forth again, because now he says, well, he didn't really want to plead guilty, and he's got a technical argument that the court didn't permissive or didn't properly withdraw it. But I asked the question, well, once he said at the April 22nd proceeding, I want a trial, she said, fine, we have a trial. She set it for a docket call less than a month later. She told the parties there will be a jury. She held a pretrial conference and jury selection on May the 13th. There was a jury there, and it was only because of the conversations that are going back and the — and her evidentiary rulings that it gets to the point that the defendant comes back around and says, I see this as sentencing circumstance. I'll go with you, Judge. You'll hear all of these things. As to the second issue, the — the judge's participation in plea negotiations, violation of the rule, I don't see that she was participating. I don't see any of the ills that the court has recognized before in Judge's participation. She wasn't talking about terms of the that the number of videos for sentencing purposes would not include the deleted videos that he deleted from his computer. And the judge says, exactly as she should, that's a sentencing issue. We're not resolving sentencing issues here. She would not make a commitment. She wasn't going to engage in plea negotiations. And she had said earlier in the proceedings she had not — or I think later in the proceedings — she had not participated in plea or at least indulgence by the court for Mr. de Leon to decide whether he wanted to exercise his trial right or whether he wanted to persist in his guilty plea. It's an unusual record. I don't believe I've ever read a record so many times. And each time I read it, it's almost like it's a palimpsest. I find something else in there that I didn't fully comprehend before. But I think that this circumstance is not unusual. I don't think it's unusual for a district court to have a defendant who is pled guilty who comes in and waffles on it to say, look, if you're not going to admit your guilt, I'm not going to accept this plea. We'll have a trial. And in many of those circumstances, the defendant comes back and says, no, I've thought about it. I've talked with my lawyer. I persist in it. The question, I guess, then before the court is, well, what magic is the court supposed to do when that happens? Is there supposed to be some sort of formal setting aside of the guilty plea? And I'd submit to the court that whether Judge Moses had entered an order saying your plea is withdrawn or not withdrawn, by the time you get to the June 23 proceeding, we would have probably gone through the same circumstances and we'd be at the same place, except we wouldn't have an issue on appeal because there's no ambiguity as to what the judge's understanding of the withdrawal of the plea was. But I think that we would be at the same place. The judge would have made the same preliminary evidentiary rulings. He would have been in the same box or the same corner with respect to what the sentencing issues were going to be. They weren't issues that the jury was going to be able to hear. And counsel would have had the same problems putting him on the stand with his being cross-examined and basically opening the door, not only to those statements, but he had another problem in there, and his problem was there was evidence that the judge said would not come in under 404B unless he opened the door, and that was circumstances that he had molested his own children some years before. So the defendant was in a difficult position, and it's not surprising that he pleaded with the judge, please make this go away. But in the end, at the end, he had good counsel. He had plenty of opportunity. He had a clear explication by Judge Moses of these will be the issues at trial. These are sentencing issues. So decide what you want to do, but you can't get up and claim entrapment where there is no such thing. And in the end, he decided to persist in his plea. And I think that's what's going on here. And I'd ask the court to affirm the I think Mr. Durbin's version of the facts would make more sense if what the court had said to Mr. De Leon was you can still plead guilty, but that isn't what the court said. The court said I am not inclined to allow you to withdraw your guilty plea. This was, it is not uncommon for a defense counsel to be dealing with an unsure client, an unsure defendant, and it's not uncommon for a district court to be encountering an unsure defendant. But what is uncommon is what occurred in this case, and that's the district court involved itself in the determination of whether or not to plead guilty. The interference in the plea Wasn't there a, wasn't, in a sense, the district court, by implication, allowed the withdrawal of the, the district court never ruled on the guilty plea. That's the district court never said I accept your guilty plea during all of this back and forth. And so the district judge, by implication, at least thought, well, you've withdrawn your guilty plea because we're going to have this jury called. We've got this pretrial session after the docket call. And then we get back into it and the defendant's wanting to plead guilty. I mean, it's just like a tennis match here between back and forth. I want to, I want to plea, I don't want to plea. The, the pretrial hearing began on rulings of admissibility of evidence. But the point in time where the court pivoted and said I'm not inclined to allow the withdrawal of the guilty plea, they weren't discussing whether to allow an affirmative defense to go forward. What was being discussed specifically was whether to suppress statements made by Mr. De Leon in conjunction with a, with a guilty plea that had been withdrawn. And I think this is when the court realized that there could be a ruling where some of these statements actually would be suppressed. And that's when the court brought up not allowing the withdrawal of the guilty plea. There was an equivocation on the part of Mr. De Leon or Mr. Hudson, his counsel, as to how this was going to proceed. They, they wanted the suppression of statements, but they were going to a jury trial. So there really wasn't this tennis match back and forth. And yes, there, there had been a, a plea agreement negotiated between the parties. But this court has recognized specifically in the Miles case and in the Rodriguez case that even when a, a guilty plea has been executed, a court can still be found to have a guilty plea. And the court has recognized that the court has been found to have improperly participated by changing terms of the agreement. And opposing counsel is incorrect when it ignores that the court said, well, well, it sounds more like you just want to discuss matters of sentencing, Mr. De Leon, Mr. De Leon, as part of his plea agreement at 824 and 825 in the record, agrees not to contest any of these matters as far as the numbers are concerned. The court has no other questions. All right, thank you, Ms. Greenberg. Thank you. Your case is under submission. Next case, Gibson v. Collier.